IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BHCMC, LLC, BOYD GAMING
CORPORATION, and KANSAS
ENTERTAINMENT, LLC,

        Plaintiffs,

v.

POM OF KANSAS, LLC, 34TH STATE
GAMES, LLC, and SC. & N., INC.,

        Defendants.

Case No. 20-2609-DDC-ADM

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' Motion to Remand (Doc. 8). Defendants filed a Response (Doc. 12) and plaintiffs filed a Reply (Doc. 15). Plaintiffs ask the court to remand this action to the District Court of Wyandotte County, Kansas. Doc. 8 at 2. For the following reasons, the court grants plaintiffs' Motion to Remand because it lacks subject matter jurisdiction.

I.      Background

Plaintiffs BHCMC, LLC ("Boot Hill"), Boyd Gaming Corporation ("Boyd Gaming"), and Kansas Entertainment, LLC ("Kansas Entertainment") filed their First Amended Petition ("Amended Petition") against Pom of Kansas, LLC ("Pom"), 34th State Games, LLC ("34th State"), and SC. & N., Inc. ("SCN") in the District Court of Wyandotte County, Kansas. Doc. 1 at 49, 51–52 (Am. Pet. ¶¶ 11–16). Plaintiffs assert two claims against all three defendants: (1) tortious interference with contract and business expectancy, and (2) Kansas common law unfair business practices. *Id.* at 60–61 (Am. Pet. ¶¶ 64–80).

Plaintiffs assert: "Recreational gaming in Kansas is heavily regulated." *Id.* at 53 (Am. Pet. ¶ 21). "As a matter of constitutional law, '[l]otteries . . . are forever prohibited,' except that 'the legislature may provide for a state-owned and operated lottery.'" *Id.* (quoting Kan. Const., art. XV, §§ 3, 3c). "The Kansas Legislature did so provide with the Lottery Act, [Kan. Stat. Ann. §] 74-8701 through 74-8732." *Id.* (Am. Pet. ¶ 22). "The Lottery act established the Kansas Lottery as a state agency and vested it with full authority over all lottery operations." *Id.* "In 2007, the original Lottery Act was supplemented by the Kansas Expanded Lottery Act, [Kan. Stat. Ann. §] 74-8733 through 74-8773 ('KELA')." *Id.* (Am. Pet. ¶ 23). "KELA provides for the operation of state-owned 'lottery gaming facilities,' *i.e.*, 'that portion of the building used for the purposes of operating, managing and maintaining lottery facility games.'" *Id.* (quoting Kan. Stat. Ann. § 74-8702(1)).

Plaintiffs manage "their respective Casino[s] by virtue of the Gaming Facility Management Contract (the 'Agreement') that they each entered with the Kansas Lottery." *Id.* at 54 (Am. Pet. ¶ 29). "Plaintiffs are three of only four State-approved gaming facility managers across the entire State." *Id.* at 51 (Am. Pet. ¶ 7). Under their Agreements, "each casino gaming facility is 'owned and operated by the Kansas Lottery.'" *Id.* at 54 (Am. Pet. ¶ 30). "This means that gaming facility electronic gaming machines ("EGMs"), and the revenue derived therefrom, are owned by the Kansas Lottery." *Id.* Plaintiffs pay a privilege fee to manage Kansas's casinos and only "receive a management fee calculated as a percentage of the managed Casino's gaming facility revenues" in return. *Id.* at 55 (Am. Pet. ¶ 33).

Plaintiffs contend defendants each distribute and operate Dragon's Ascent in Kansas. *Id.* at 59 (Am. Pet. ¶¶ 60–61). Plaintiffs assert that "Dragon's Ascent is an illegal EGM developed by Pace-O-Matic, Inc. that is already being distributed and installed by Defendants POM and

34th State at various bars, restaurants, and other establishments in different cities and towns across Kansas, including Freddy T's, operated by Defendant" SCN.  *Id.* at 58 (Am. Pet. ¶ 52). "Dragon's Ascent is a video game-styled EGM wherein the player shoots at dragons flying onscreen." *Id.* (Am. Pet. ¶ 54).  "The player can shoot as rapidly or as infrequently as they desire." *Id.*  "A person playing Dragon's Ascent pays to play the game, including paying for each 'shot' the player takes." *Id.* (Am. Pet. ¶ 56).  "If the player 'captures' a dragon, he or she receives credit that can be redeemed for cash." *Id.* (Am. Pet. ¶ 57).  "Pom has tried to conceal the true nature of Dragon's Ascent by branding it as a 'game of skill' or a 'skill game.'" *Id.* at 59 (Am. Pet. ¶ 58).  "In various documents and pleadings, POM has claimed there are no elements of chance involved in Dragon's Ascent." *Id.*  "Contrary to POM's averments, however, upon information and belief, the outcome of Dragon's Ascent is predominantly determined by chance." *Id.* (Am. Pet. ¶ 59).  "Dragon's Ascent is therefore an illegal lottery and gambling device prohibited by [Kan. Stat. Ann. §] 21-6403(b) and (e)(2), and 21-6406." *Id.*

Plaintiffs contend defendants "are attempting to circumvent Kansas's well-regulated gaming program in order to reap a profit" by "placing illegal electronic gaming machines in bars, restaurants, and other unconventional locations across Kansas, without the agreement or approval of the State or the Kansas Lottery." *Id.* at 51 (Am. Pet. ¶¶ 8–9).  Defendant Pom "is a subsidiary of Pace-O-Matic, Inc." and "Pace-O-Matic, Inc. develops and orchestrates the creation and distribution of the illegal gaming machines" known as Dragon's Ascent. *Id.* at 52 (Am. Pet. ¶ 14).  "Defendant 34th State helps distribute the illegal gaming machines across Kansas, and maintains the website www.kansasdragon.com to promote the subject illegal gaming machines to bars, restaurants, and other unconventional locations in Kansas." *Id.* (Am. Pet. ¶ 15).  Defendant SCN "owns and operates Freddy T's Bar & Grill" located in Johnson County,

Kansas.  *Id.* (Am. Pet. ¶ 16).  Pom and 34th State have "distributed and installed inside Freddy T's one or more of the illegal gaming machines that is the subject matter of this lawsuit[.]"  *Id.*  Plaintiffs allege that "all Defendants share in the revenue produced by the illegal gaming machine(s) installed inside Freddy T's."  *Id.*

Defendants removed this action alleging diversity jurisdiction under 28 U.S.C. § 1332(a) because the only non-diverse defendant is SCN, and, according to defendants, SCN was fraudulently joined to destroy diversity.  Doc. 1 at 2–3, 7.  Defendants argue plaintiffs "are unable to state a claim against SCN" under Kansas law.  *Id.* at 7.  In their Motion to Remand, plaintiffs argue that not only is SCN a non-diverse party but defendant 34th State also shares citizenship with plaintiff Boot Hill, thus destroying diversity.  Doc. 9 at 1.  Plaintiffs then argue defendants have failed to satisfy their burden to show fraudulent joinder of either SCN or 34th State.  *Id.*  Defendants counter, arguing that plaintiffs "are unable to state a claim against 34th State and SCN, [so] their citizenship should be ignored for diversity purposes" and the court should dismiss those defendants from the case.  Doc. 12 at 19–20.  Defendants do not challenge plaintiffs' assertions that 34th State and SCN are non-diverse defendants who otherwise would destroy diversity jurisdiction.  *See generally id.*

Below, the court discusses the applicable legal standard for assessing fraudulent joinder and then applies that standard to the issue presented here.

## II.    Legal Standard

"'Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction.'"  *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (quoting *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1274 (10th Cir. 2012)).  "As the parties

removing this case to federal court, the defendants bear the burden of establishing jurisdiction by a preponderance of the evidence." *Id.* at 985.

"The federal removal statute, 28 U.S.C. § 1441, permits a defendant to remove to federal court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Dutcher*, 733 F.3d 984–85 (quoting 28 U.S.C. § 1441(a)). This court may exercise subject matter jurisdiction under 28 U.S.C. § 1332—the diversity jurisdiction statute. "In order to invoke diversity jurisdiction, 'a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000.'" *Dutcher*, 733 F.3d at 987 (quoting *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006)); *see also* 28 U.S.C. § 1332(a)(1). "Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant." *Dutcher*, 733 F.3d at 987.

If plaintiffs joined a non-diverse defendant to the suit, defendants still may establish diversity jurisdiction if plaintiffs "fraudulently joined" a non-diverse defendant. *See Lundahl v. Halabi*, 600 F. App'x 596, 602 (10th Cir. 2014) ("Fraudulently joined defendants need not be considered for the purposes of determining complete diversity." (first citing *Smoot v. Chi., Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967); then citing *Dutcher*, 733 F.3d at 987–88)). "To establish [fraudulent] joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988 (internal quotation marks and citation omitted).

"The defendant seeking [to sustain] removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (internal quotation marks and citation omitted). "The standard for fraudulent joinder 'is more exacting

5

than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6).'" *Sangha v. Volkswagen AG*, No. 20-2115-JAR-KGG, 2020 WL 3256262, at *3 (D. Kan. June 16, 2020) (quoting *Montano v. Allstate Indem.*, No. 99-2225, 211 F.3d 1278, 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000) (unpublished table opinion)).  When assessing claims of fraudulent joinder, the Tenth Circuit directs district courts "to 'pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'" *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).  "'This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty.'" *Sangha*, 2020 WL 3256262, at *3 (quoting *Smoot*, 378 F.2d at 882).  "Accordingly, defendants must prove their allegation of fraudulent joinder by demonstrating that there is *no possibility* that plaintiff would be able to establish a cause of action against [non-diverse defendant] in state court." *Boyce v. Wal-Mart Stores, Inc.*, No. 16-2221-JWL, 2016 WL 2941339, at *1 (D. Kan. May 20, 2016) (emphasis added); *see also De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1162–63 (D.N.M. 2015) (same).

## III.    Analysis

Here, plaintiffs assert two causes of action against all defendants.  Both claims arise from distributing and operating Dragon's Ascent, an allegedly illegal gaming device:  (1) Tortious Interference with Contract and Business Expectancy, and (2) Kansas Common Law Unfair Business Practices.  Doc. 1 at 60–61 (Am. Pet. ¶¶ 64–80).  Defendants removed this case to federal court, arguing that diversity jurisdiction exists because plaintiffs' "tortious interference and unfair competition claims both fail as a matter of law."  Doc. 12 at 2.  They assert plaintiffs "cannot establish a cause of action against either 34th State or SCN," so, the court should ignore

34th State and SCN's citizenship—a citizenship that overlaps with plaintiffs' citizenship—to determine the diversity issue.  *Id.*

Defendants rely on the second prong of the fraudulent joinder test—"inability of the plaintiff to establish a cause of action against the non-diverse party"—for their argument that the court should deny plaintiffs' Motion to Remand.  *See Dutcher*, 733 F.3d at 988 (internal quotation marks and citation omitted).  For defendants to prevail, they must show there is "no possibility" plaintiffs can state either claim against either 34th State or SCN under Kansas law.  *Boyce*, 2016 WL 2941339, at *1.  The court addresses plaintiffs' two claims in turn, below.

### a.  Claim One:  Tortious Interference with Contract and Business Expectancy

Plaintiffs' first claim is actually two claims.  *See Cohen v. Battaglia*, 293 P.3d 752, 755 (Kan. 2013) (defining "tortious interference with a contract" with different elements than "tortious interference with a prospective business advantage or relationship").  Plaintiffs' Motion to Remand clarifies the claim they assert, stating that they claim tortious interference with business expectancy against all defendants.  Doc. 9 at 7.

Kansas defines Tortious Interference with Business Expectancy as:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) a reasonable certainty that, except for the conduct of the defendant, plaintiff would have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) incurrence of damages by plaintiff as a direct or proximate result of defendant's misconduct.

*Cohen*, 293 P.3d at 755.[1]  "'While these torts tend to merge somewhat in the ordinary course, the former is aimed at preserving existing contracts and the latter at protecting future or potential

---

[1]    Defendants' arguments never delineate the differences between "tortious interference with a contract" and "tortious interference with a prospective business advantage or relationship."  *See* Doc. 12 at 13.  Instead, defendants merely assert "Plaintiffs['] tortious interference claims fail because Dragon's Ascent does not cause any contract breach or loss of business expectancy."  *Id.* (first citing *Home Shopping Club, Inc. v. Miller Broad., Inc.*, 982 F. Supp. 809, 811 (D. Kan. 1997) (holding "claim of

contractual relations.'"  *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 151 (Kan. 2003)

(quoting *Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986)).

As explained below, plaintiffs allege facts, that, if true, could satisfy each element of this

tort claim under Kansas law against defendants 34th State and SCN.

> i.    Element One:  existence of a business relationship or expectancy with the
> probability of future economic benefit to the plaintiff

Plaintiffs' Amended Petition asserts that each plaintiff entered into a Gaming Facility

Management Contract ("Agreement") with the State of Kansas for the privilege of operating a

casino in Kansas.  Doc. 1 at 54 (Am. Pet. ¶ 29).  Under their Agreements, the Kansas Lottery

owns and operates the facilities managed by plaintiffs, so, the "gaming facility electronic gaming

machines ('EGMs'), and the revenue derived therefrom, are owned by the Kansas Lottery."  *Id.*

at 54 (Am. Pet. ¶ 30).  Plaintiffs assert this arrangement with the Kansas Lottery serves two

purposes:  (1) "it ensures the integrity of Kansas gaming by requiring Plaintiffs to manage the

Casinos under the close supervision of the Kansas Lottery" and (2) it "incentivizes Plaintiffs to

maximize the State's share of gaming revenues by tying Plaintiffs' own compensation to the

same pool of revenue."  *Id.* at 55 (Am. Pet. ¶ 35).

Plaintiffs allege their business expectancy is that "under the Agreement[s] and KELA that

they would be competing only with the other State-owned lottery gaming facilities and the

---

tortious interference with contract fails unless the alleged interference resulted in an actual breach of, and
not just an adverse impact on, the contract"); then citing *Jayhawk 910VP, LLC v. WindAirWest, LLC*, No.
18-11534-KGG, 2020 WL 1686793, at *11 (D. Kan. Apr. 7, 2020) ("Under Kansas law, a party bringing
a claim for tortious interference with a contract or for tortious interference with existing or prospective
business relationships is required to prove intentional conduct designed to induce a breach [of] the
contract or disrupt the business relationship.").  Then they argue defendants' "actions have not caused
either party to breach the Contracts."  Doc. 12 at 14; *see also id.* at 13 ("Plaintiffs fail to cite a single
provision of their Contracts that is breached as a result of Dragon's Ascent's use.").  Defendants'
arguments fail to clarify which elements of tortious interference with business advantage or expectancy
they challenge.  So, the court has done its best to discern which of defendants' arguments challenge
particular elements of that claim.

limited number of EGMs placed at parimutuel racing facilities." Doc. 1 at 59 (Am. Pet. ¶ 61).

Plaintiffs expected "future economic benefit" from "their semi-exclusive right to manage a

lottery gaming facility featuring EGMs and other State-approved lottery games." *Id.* at 60 (Am.

Pet. ¶¶ 66–67). These allegations assert sufficient facts to plead a valid business expectancy with

the probability of future economic benefit to plaintiffs.

Defendants incorrectly argue the merits of this element and contend plaintiffs' business

expectancy is narrower than plaintiffs alleged. *See* Doc. 12 at 7. They assert plaintiffs hold a

business expectancy only in *casinos* because plaintiffs' Agreements provide "exclusivity only as

to *casino* operations." *Id.*; *see also id.* at 11 ("Plaintiffs mischaracterize *what* that business

expectancy actually is."). So, they argue, plaintiffs cannot state a claim against defendants for

operating Dragon's Ascent because it's a "*non-casino* game which is unregulated by KELA, and

has no relationship to Plaintiffs' operations or contract rights." *Id.* at 7. They argue "KELA

makes clear that Plaintiffs bargained for nothing more than the right to operate (subject to the

operational control of the Kansas lottery) their lottery gaming facilities in their respective

gaming zones." *Id.* at 11–12 (citing Kan. Stat. Ann. § 74-8734(d)).

Also, defendants' arguments try to narrow the scope of plaintiffs' "business expectancy"

to include only the explicit terms in the Agreements. *See id.* at 15 ("Plaintiffs never bargained

for the right to have the Kansas Criminal Code enforced against everyone they perceive as

competition."). But defendants fail to provide any controlling, or persuasive, authority that only

a contract can create or define the extent of a "business expectancy." *See id.* They comb

through the Agreements and use their provisions to narrow plaintiffs' "business expectancy."

For reasons explained below, their arguments limiting plaintiffs' business expectancy fail to

persuade the court.

*First*, defendants argue that KELA provides plaintiffs a regulated monopoly over casinos. Doc. 12 at 12.  They assert KELA "contains no mandate for Kansas agencies to enforce an alleged monopoly on 'electronic gaming machines' or other electronic games outside of KELA's casino framework."  *Id.*  Defendants argue that because KELA doesn't require Kansas agencies to enforce Kansas regulations, plaintiffs never could hold a business expectancy that "unregulated games like Dragon's Ascent" would not operate in Kansas outside casinos.  *See id.* Defendants' argument that Dragon's Ascent is not regulated by KELA misses the point. Plaintiffs argue defendants' unregulated and illegal game infringes on their bargained-for benefit to the profit from managing casinos operating within Kansas's regulations and laws—casinos that should contain the only authorized gambling devices in Kansas, with few exceptions not germane here.  Their allegations suffice to state the business expectancy element of the claim.

*Second,* defendants' argument that the Agreements "explicitly recognize" other types of gaming machines will operate in Kansas comes perilously close to misrepresentation. Defendants assert "Dragon's Ascent is not an 'electronic gaming machine,'" because it is "not located in Kansas casinos, nor connected to a central computer monitored by the Kansas Lottery[.]"  Doc. 12 at 9 (citing Kan. Stat. Ann. § 74-8702(c)).  Defendants contend, at most, Dragon's Ascent qualifies as a "gray machine," which refers to "unauthorized games not connected to the State's central computer."  *Id.* at 10 (citing Kan. Stat. Ann. § 74-8702(g)). Defendants argue "the Contracts explicitly recognize that gr[a]y machines will operate in Kansas, but will not be permitted at Lottery Gaming Facilities."  Doc. 12 at 14 (first citing Doc. 12-1 at 8 (Exhibit 1 at § 6(n)); then citing Doc. 12-2 at 8 (Exhibit 2 at § 6(n)); then citing Doc. 12-3 at 8 (Exhibit 3 at § 6(n)) (emphasis omitted)).  The contractual provisions that defendants cite cannot support the proposition that defendants attribute to it.  The Agreements actually

provide, "No Gray Machines will be permitted at the Lottery Gaming Facility."  Doc. 12-1 at 8.

*See also* Doc. 12-2 at 8 (same); Doc. 12-3 at 8 (same).  Based on a plain reading of this

provision, it does nothing more than prohibit plaintiffs from operating unregulated machines in

the casinos they manage.  Nothing in the cited provision suggests that plaintiffs should expect

gray machines to operate in Kansas at other locations.  Defendants stretch the Agreement beyond

any reasonable interpretation when they assert it should have caused plaintiffs to expect other

types of gaming devices to operate in Kansas without regulation.  The court rejects this

argument.

  *Third*, defendants argue plaintiffs' "sole monetary remedy" is defined in the Agreements,

so plaintiffs cannot have a business expectancy beyond their bargained-for remedy.  Doc. 12 at

15.  Again, defendants miss the point of plaintiffs' argument—*i.e.*, that plaintiffs' Agreements

with the Kansas Lottery provide them a semi-exclusive right to manage casinos with regulated

gambling devices.  The exact terms of their respective Agreements with the Kansas Lottery do

not confine the type of action they can bring in tort, nor do defendants cite any case law

supporting their sole remedy argument.

  In sum, defendants' discussion of plaintiffs' Agreements improperly reframes the claims

they make.  The question isn't what plaintiffs explicitly bargained-for in their respective

Agreements.  Instead, the controlling question currently is whether plaintiffs sufficiently alleged

that their business expectancy permits limited competition from other types of gambling devices.

They have.  Defendants thus have failed to show there is no possibility plaintiffs could establish

element one—existence of a business relationship or expectancy with the probability of future

economic benefit to the plaintiff.

      ii.     Element Two:  knowledge of the relationship or expectancy by the defendant

Plaintiffs assert that "Defendants have knowledge of the Agreement[s], this expectancy, and this exclusivity" that plaintiffs bargained-for with the Kansas Lottery.  Doc. 1 at 60 (Am. Pet. ¶ 68).  Defendants don't challenge this element of the asserted tort claim.  *See generally* Doc. 12 (arguing Dragon's Ascent does not fit within KELA's regulatory framework and that plaintiffs "failed to identify any contract breach or loss of business expectancy").  So, they fail to meet their burden to show that there is "no possibility" that plaintiffs can prevail on this element.

      iii.     Element Three:  a reasonable certainty that, except for the conduct of the defendant, plaintiff would have continued the relationship or realized the expectancy

Plaintiffs' Amended Petition asserts plaintiffs "are reasonably certain that, but for Defendants' tortious and unlawful conduct, Plaintiffs would have continued to realize in full their reasonable expectancy of future economic benefit under" their Agreements.  Doc. 1 at 61 (Am. Pet. ¶ 72).  To support this contention, plaintiffs rely on Kansas's strict regulations of the lottery industry and its general prohibition against gambling devices.  *Id.* at 56 (Am. Pet. ¶¶ 38–40); *see also* Kan. Stat. Ann. § 74-8734(h)(19) (prohibiting the state from "[e]ntering into management contracts for more than four lottery gaming facilities or similar gaming facilities"); Kan. Stat. Ann. § 21-6403(e)(1) (defining "gambling device" as a machine that "when operated may deliver, as the result of chance, any money or property").  They argue defendants' "distribution and operation of Dragon's Ascent interferes with Plaintiffs' reasonable expectancies under the Agreement[s] and KELA because it threatens to turn every bar and restaurant in Kansas into unlicensed gaming facilities[.]"  Doc. 1 at 59 (Am. Pet. ¶ 61).  Defendants thus subvert plaintiffs' "expectations under the Agreement[s] and KELA that they

would be competing only with the other State-owned lottery gaming facilities and the limited number of EGMs placed at parimutuel racing facilities." *Id.*

Once more, defendants try to argue the merits of plaintiffs' claim and merge this element with the first element. *See* Doc. 12 at 7–15.  Defendants contend plaintiffs don't have a reasonable business expectancy that unregulated gambling devices won't operate in Kansas. *See supra* Part III.a.i.  Defendants argue that because plaintiffs have no business expectancy that unregulated gambling devices will not operate in Kansas, they cannot show Dragon's Ascent affects their business expectancy.  Doc. 12 at 13.  But defendants' argument ignores what plaintiffs actually allege in their Amended Petition.  This issue is not capable of summary determination since plaintiffs have alleged sufficient facts that, but for defendants' actions, they would continue to realize their business expectancy in operating their casinos with limited competition.  *See Sangha*, 2020 WL 3256262, at *3 (The issue "must be capable of summary determination and be proven with complete certainty." (internal quotation marks omitted)).  Defendants fail to meet their burden to show that plaintiffs will be unable "to establish [this element of their] cause of action" against the non-diverse defendants.  *Dutcher*, 733 F.3d at 988.

iv.     Element Four:  intentional misconduct by defendant

Plaintiffs argue they have met their pleading burden for the fourth element of their tort claim—the element of intentional misconduct.  Specifically, plaintiffs allege that Dragon's Ascent violates the Kansas Criminal Code.  Doc. 1 at 59 (Am. Pet. ¶ 59).  Plaintiffs assert defendants' intentional misconduct includes "operating a gambling device [that] is unlawful," and thus, "it is 'misconduct' of the kind required to establish a claim for tortious interference."  Doc. 9 at 8 (first citing *Pipeline Prods., Inc. v. Madison Cos., LLC*, 428 F. Supp. 3d 591, 605 (D. Kan. 2019) (applying Kansas Law) (defendants can avoid liability for tortious interference torts

if they do not employ "wrongful means" which includes "independently actionable conduct, or conduct which itself could form the basis for liability"); then citing *DP-Tek, Inc. v. AT & T Glob. Info. Sols. Co.*, 100 F.3d 828, 834 (10th Cir. 1996) (interpreting Kansas law) ("state law suggests independently actionable conduct is required" for a tortious interference tort)). *Cf. Classic Commc'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 956 F. Supp. 910, 922 (D. Kan. 1997) ("It follows, then, that competitive conduct which is not independently actionable does not become actionable because it interferes with another's prospective contractual relations.").

Defendants do not challenge plaintiffs' interpretation of "intentional misconduct." *See* Doc. 12.  Instead, they argue Dragon's Ascent does not fit within Kansas's regulatory framework, so, it is not illegal. *Id.* at 8–11.  Thus, they argue, it cannot provide the requirement of intentional misconduct because it could not interfere with plaintiffs' Agreements. *Id.* Defendants assert they are seeking a Declaratory Judgment from the District Court of Douglas County, Kansas, that Dragon's Ascent is not a gambling device and thus not illegal under Kansas law. *Id.* at 8.  Because defendants do not challenge plaintiffs' interpretation of Kansas Law as it applies to this element, they need to show there is no possibility plaintiffs could establish that Dragon's Ascent is an illegal gambling device.

Under the Kansas Constitution, "Lotteries . . . are forever prohibited."  Kan. Const. art. XV, § 3.  But the "legislature may provide for a state-owned and operated lottery[.]" *Id.* § 3c. Kansas criminalizes gambling, which includes "entering and remaining in a gambling place with the intent . . . to play a gambling device."  Kan. Stat. Ann. § 21-6404(a)(2).  A "gambling device" includes "any other machine, mechanical device, [or] electronic device . . . [w]hich when operated may deliver, as the result of chance, any money or property[.]"  Kan. Stat. Ann. § 21-6403(e)(1)(A)(i).  To determine whether a device qualifies as a gambling device rather than a

game of skill, Kansas applies the "dominant factor" test.  *Three Kings Holdings, LLC v. Six*, 255 P.3d 1218, 1223 (Kan. 2011).  "[D]etermination of whether a game is dominated by skill or chance is a factual question."  *Id.* at 1226 (treating "district court's conclusion that Kandu Challenge is a game of chance as a factual finding" and reviewing "district court's findings for substantial competent evidence").

Plaintiffs allege that a "person playing Dragon's Ascent pays to play the game, including paying for each 'shot' the player takes."  Doc. 1 at 58 (Am. Pet. ¶ 56).  "If the player 'captures' a dragon, he or she receives credit that can be redeemed for cash."  *Id.* (Am. Pet. ¶ 57).  Plaintiffs allege "upon information and belief, the outcome of Dragon's Ascent is predominantly determined by chance."  *Id.* at 59 (Am. Pet. ¶ 59).  So, they argue, it violates Kan. Stat. Ann. § 6403(e)'s general prohibition against games of chance.  *Id.*

Defendants' argument sails right past any of plaintiffs' factual allegations and simply asserts the conclusion that Dragon's Ascent is not an "electronic gaming machine," as KELA defines that term.  Doc. 12 at 8.  But this argument misses the point.  Defendants misapprehend the showing plaintiffs must make at this juncture, and thus, circumvents the analysis the court must apply to decide plaintiffs' motion.  In essence, defendants argue that, ultimately, they will prevail by showing that Dragon's Ascent is not a gambling device.  But that isn't the governing inquiry at this stage.  Instead, the question is whether defendants have shown that there is "no possibility" that plaintiffs will prevail on this element.  They have not.  Plaintiffs' Amended Petition asserts specific facts alleging that Dragon's Ascent is a game of chance and thus qualifies as an illegal gambling device under Kansas law.  Doc. 1 at 58–59 (Am. Pet. ¶¶ 56–59).  As the Kansas Supreme Court has explained, determining whether a game is a "gambling device" prohibited by Kansas law is a "factual question" that examines whether the "game is

dominated by skill or chance." *Three Kings*, 255 P.3d at 1226.  On this record, the court cannot make a "summary determination" that Dragon's Ascent is *not* an illegal gambling device, as the defendants ask the court to do.  So, defendants fail to meet their high burden to show there is no possibility plaintiffs could prove Dragon's Ascent violates Kansas law.  *See Boyce*, 2016 WL 2941339, at *1 (defendants must show there is "no possibility that plaintiff would establish a cause of action against" a non-diverse defendant).

> v.    Element Five:  plaintiff has incurred damages as a direct or proximate result of defendants' misconduct

Plaintiffs allege defendants' "conduct has negatively affected the value of Plaintiffs' Agreement with the Kansas Lottery and undermined their investment in the Casinos' lawful operations."  Doc. 1 at 60 (Am. Pet. ¶ 71).  They assert they receive "a management fee calculated as a percentage of the managed Casino's gaming facility revenues."  *Id.* at 55 (Am. Pet. ¶ 33).  And "Defendants' distribution and operation of Dragon's Ascent improperly and illegally infringes upon Plaintiffs' expectations under the Agreement and KELA that they would be the managers of [three] of a limited number of lottery gaming facilities with the semi-exclusive right to offer EGMs for public use."  *Id.* at 59 (Am. Pet. ¶ 60).  Defendants do not challenge that plaintiffs have pleaded sufficient facts for their asserted theory of causation and damages, so, they fail to meet their burden for this element.

> vi.    Conclusion

To defeat plaintiffs' remand motion, defendants must show there is no possibility that plaintiffs can establish this cause of action against either 34th State or SCN.  Defendants haven't met that standard.  Instead, plaintiffs pleaded facts sufficient under Kansas law to support each element of tortious interference with business expectancy claim against both 34th State and SCN.

Defendants have not shown that either of these contentions is capable of summary resolution. They thus have failed to meet their burden to show fraudulent joinder of 34th State or SCN.

### b.  Claim Two:   Kansas Common Law Unfair Business Practices

Plaintiffs assert a second cause of action against defendants 34th State and SCN for Kansas Common Law Unfair Business Practices.  Doc. 1 at 61 (Am. Pet. ¶¶ 75–80).  They contend that this claim follows the Restatement (Third) of Unfair Competition.  Doc. 9 at 10. Plaintiffs allege defendants' distribution and operation of Dragon's Ascent, an illegal gambling device, harms plaintiffs' "commercial relations by providing illegal and unanticipated competition."  *Id.* at 11 (citing Doc. 1 at 59, 61 (Am. Pet. ¶¶ 60–61, 79–80)).  Plaintiffs argue they allege sufficient facts to support an unfair business cause of action.  *Id.*

Defendants' Notice of Removal alleges, "Kansas has no cause of action, either statutory or at common law, for unfair business practices, and, pursuant to Rule 12(b)(6), Fed. R. Civ. P., Plaintiffs fail to state a claim against SCN under this alleged recovery theory."  Doc. 1 at 7. Defendants' Response to plaintiffs' Motion to Remand backtracks from their broad statement.  It asserts, instead, that this common law tort "only applies where acts are actionable 'by the other,' meaning they create a private right of action and are meant to protect a party from unfair competition."  Doc. 12 at 16.  They argue "Kansas' Criminal Code is not meant to protect Plaintiffs, and offers Plaintiffs no private right of action."  *Id.*  So, defendants argue, plaintiffs' "unfair competition claims fail as a matter of law."  *Id.* at 18,

While the court need not address the viability of this second cause of action to decide the current motion, the court, out of an abundance of caution, nonetheless addresses it below.[2]

---

[2]     The court could decide the present motion based solely on its conclusion that plaintiffs have asserted a viable claim for tortious interference against all three defendants.  That result, by itself, suffices for a finding that plaintiffs didn't join the non-diverse defendants fraudulently.

    i.  Legal Standard for Unfair Business Practice Tort

  This court already has concluded that Kansas law recognizes a claim for unfair competition. *AgJunction LLC v. Agrian Inc.*, No. 14-CV-2069-DDC-KGS, 2014 WL 2557704, at *7 (D. Kan. June 6, 2014) (citing *Airport Sys. Int'l, Inc. v. Airsys ATM, Inc.*, 144 F. Supp. 2d 1268, 1271 (D. Kan. 2001); *see also Airport Sys.*, 144 F. Supp. 2d at 1270–72 (interpreting Kansas case law and Restatement (Third) of Unfair Competition). It has predicted Kansas would adopt the Restatement (Third) of Unfair Competition for this tort. *See Airport Sys.*, 144 F. Supp. 2d at 1270. And, it has recognized that Kansas views this common law claim broadly:

> Unfair competition . . . does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values.

*AgJunction*, 2014 WL 2557704, at *7 (quoting *Airport Sys.*, 144 F. Supp. 2d at 1271). The Restatement (Third) of Unfair Competition provides additional guidance:

> This Section does not preclude the imposition of liability when the actor's participation in the market is itself unlawful. One who engages in a particular business or trade in violation of a statute prohibiting such activity, either absolutely or without prescribed permission, may be subject to liability to others engaged in the business or trade if one of the *purposes* of the enactment is to protect the others against unauthorized competition and the recognition of a *private right of action is not inconsistent* with the legislative intent. *This result is an application of the general principles relating to the imposition of tort liability for violations of legislative enactments that do not explicitly authorize a private cause of action.*

Restatement (Third) of Unfair Competition § 1 cmt. a (emphasis added). In short, the tort of unfair business practices encompasses a broad range of conduct and legal theories of recovery. *See id.*

ii.      Analysis

Plaintiffs have pleaded facts sufficient to establish a cause of action under Kansas law against 34th State and SCN for unfair business practices.

*First*, a party may establish a cause of action for an unfair business tort against a party "who engages in a particular business or trade in violation of a statute prohibiting such activity . . . if one of the purposes of the enactment is to protect the others against unauthorized competition. . . ." Restatement (Third) of Unfair Competition § 1 cmt. a. Plaintiffs argue Kansas's "general prohibition against gambling devices under [Kan. Stat. Ann. §] 21-6403(e), together with the KELA exemption under subsection (e)(2)(A), likewise establish the Kansas legislature's intent that the State and its Casinos Managers be free from unregulated competition." Doc. 9 at 12. Thus, they argue, the Kansas Legislature intended to protect state-owned casinos—managed by plaintiffs—from competing with unauthorized gambling devices, like Dragon's Ascent.

Defendants' Response to plaintiffs' argument asserts merely that "KELA and [Kan. Stat. Ann. §] 21-6403 provide no 'purpose' to prevent competition by non-casino games." Doc. 12 at 18. But defendants fail to support their conclusory assertion with any supporting authority. *See id.* Again, defendants do not challenge plaintiffs' theory that KELA provides plaintiffs a semi-exclusive right to manage casinos with limited competition from other types of gambling devices.

Plaintiffs have alleged sufficient facts that, if true, could support the Kansas Legislature's purpose by enacting statutes to protect state-owned casinos. When taken together with plaintiffs' allegations about defendants' conduct, it's possible that plaintiffs can establish a cause of action for unfair competition based on defendants' use of Dragon's Ascent to compete against regulated

gaming activities. The court cannot predict whether plaintiffs will prevail on this claim. But neither can the court conclude there is no possibility plaintiffs could prevail on this claim.

*Second*, the Restatement's comment explicitly recognizes this cause of action does not require the underlying statute to provide a private right of action. It clarifies that plaintiffs' asserted private right of action cannot conflict with legislative intent. *See* Restatement (Third) of Unfair Competition § 1 cmt. a ("This result is an application of the general principles relating to the imposition of tort liability for violations of legislative enactments that do not explicitly authorize a private cause of action."). Defendants do not argue plaintiffs' action is inconsistent with legislative intent; they merely argue that Kansas statutes do not provide a private right of action. Doc. 12 at 18 ("Similarly, KELA and [Kan. Stat. Ann. §] 21-6403 provide no private right of action."). So, defendants have failed to meet their burden to show there is no possibility plaintiffs could establish a cause of action against either 34th State or SCN on this claim.

Defendants also argue that "Plaintiffs have not identified a **single** case where an unfair competition claim has been applied using the Third Restatement" to establish a cause of action for violating a statute. Doc. 12 at 18 (emphasis in original). In support, they cite a case from the District of Minnesota, which interpreted Minnesota law to preclude "'unfair competition claims predicated on statutory violations.'" Doc. 12 at 18 (quoting *Qwest Commc'ns Co., LLC v. Free Conferencing*, 990 F. Supp. 2d 953, 975 (D. Minn. 2014)); *see also Qwest Commc'ns*, 990 F. Supp. 2d at 975 ("The Court declines to predict that the Minnesota Supreme Court would permit unfair competition claims predicated on statutory violations."). They argue the court "should similarly reject Plaintiffs' attempt to expand Kansas' unfair competition cause of action here." Doc. 12 at 18. They provide no reason to predict that Kansas would adopt the Minnesota federal court's reasoning about Minnesota law. Defendants must shoulder a high burden and show that

plaintiffs cannot establish a cause of action under Kansas law.  They cite no Kansas case, or case interpreting Kansas law, that would preclude plaintiffs' claim against 34th State or SCN. Defendants have failed to meet their burden to show plaintiffs cannot possibly establish a cause of action under Kansas law.

Plaintiffs' Amended Petition alleges Dragon's Ascent is an EGM and defendants have "sought to conceal [its] true nature by branding" it a "game of skill[.]"  Doc. 1 at 57 (Am. Pet. ¶¶ 49–51).[3]  34th State "distribute[s] the illegal gaming machines across Kansas" and promotes the game.  *Id.* at 52 (Am. Pet. ¶ 15).  Plaintiffs' assertion that defendants conceal Dragon's Ascent's true nature, if proved as true, is capable of establishing an unfair competition tort claim for deceptive marketing techniques.  *See* Restatement (Third) of Unfair Competition § 2 (1995) ("One who, in connection with the marketing of goods or services, makes a representation relating to the actor's own goods, services, or commercial activities that is likely to deceive or mislead prospective purchasers to the likely commercial detriment of another[.]").  Plaintiffs could establish a cause of action under this theory as well.

iii.    Conclusion

In sum, defendants fail to show there is no possibility plaintiffs could establish a cause of action for unfair business practices under Kansas law.  They fail to cite any case or statute precluding plaintiffs' cause of action against either 34th State or SCN.  Given the broad nature of the tort for unfair business practices—and defendants' failure to cite Kansas case law precluding

---

[3]     The court recognizes plaintiffs assert a theory of recovery for deceptive marketing techniques, falling under the Restatement (Third) of Unfair Competition, in their Reply.  Doc. 15 at 9.  Plaintiffs also include the factual allegations supporting this theory in their Amended Complaint.  Doc. 1 at 57 (Am. Pet. ¶¶ 49–51).  Defendants' Response argues generally that plaintiffs cannot establish a claim for unfair business practices unless a statute provides a private right of action.  *See* Doc. 12 at 16–19.  So, the court considers the Reply's argument proper because it provides argument that replies to defendants' narrow interpretation of an unfair business practice cause of action.

plaintiffs' cause of action—defendants have failed to meet their burden to show fraudulent joinder on this claim.

## IV.     Conclusion

Defendants removed this action from state court, asserting plaintiffs fraudulently joined non-diverse defendants—34th State and SCN—because they have no possibility of establishing either asserted cause of action. Plaintiffs assert tortious interference of business expectancy and Kansas common law unfair business practices claims against all defendants. They have alleged facts sufficient to assert both causes of action against 34th State and SCN—the non-diverse defendants. Defendants' arguments to the contrary improperly reframe plaintiffs' allegations in their Amended Petition. Defendants challenge issues that are not capable of summary determination by this court. *Sangha*, 2020 WL 3256262, at *3 (explaining "the issue must be capable of summary determination and be proven with complete certainty" (internal quotation marks omitted)). Defendants fail to show Kansas would preclude either of plaintiffs' causes of action against either non-diverse defendant—34th State and SCN. They thus fail to meet their burden to show fraudulent joinder, and this conclusion means that the court lacks subject matter jurisdiction. The court grants plaintiffs' Motion to Remand (Doc. 8) and remands this action to the District Court of Wyandotte County, Kansas.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion to Remand (Doc. 8) is granted and this case is remanded to the District Court of Wyandotte County, Kansas. The court directs the Clerk of the Court to take all actions necessary to return this action to that state court.

**IT IS SO ORDERED.**

**Dated this 12th day of May, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**